UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-141-GWU

RICKY BRUMMETT, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Ricky Brummett brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-141 Brummett

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

07-141 Brummett

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-141 Brummett

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Brummett, a 47 year-old former mechanic and machine operator with a "limited" education, suffered from impairments related to degenerative disc disease of the lumbar spine with chronic low back pain, chronic obstructive pulmonary disease, peripheral neuropathy of the lower extremities secondary to diabetes mellitus, and "major depression secondary to medical condition and relationship problems".  (Tr. 23, 30).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 28-29).  Since the available work was found to constitute a significant number of jobs in the national economy, the plaintiff could not be considered totally disabled. (Tr. 30-31).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 30).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. The ALJ erred in evaluating the evidence relating to Brummett's mental condition. However, the current record also does not mandate an immediate award of SSI. Therefore, the Court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Ralph Crystal included such mental limitations as a restriction to simple work tasks with limited contact with the general public along with a number of physical restrictions. (Tr. 441-442). Examination of the medical record suggests the existence of much more severe mental restrictions.

Dr. Vassili Arkadiev, a treating physician at the Cumberland River Comprehensive Care Center (Cumberland River), identified the existence of very severe mental limitations including a "poor or none" ability in such areas as remembering work-like procedures, understanding short and simple instructions, maintaining attention for two-hour segments, performing at a consistent pace without an unreasonable length and number of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with peers and co-workers without distracting them or exhibiting behavioral extremes, responding to changes in a routine work setting, dealing with normal work stress,

being aware of normal work hazards and taking precautions, understanding, remembering and carrying out detailed instructions, maintaining socially appropriate behavior, and adhering to basic standards of cleanliness and neatness.  (Tr. 309-310).  These are far more severe mental restrictions than those presented in the hypothetical question.

The ALJ rejected Dr. Arkadiev's opinion as binding because he felt it was inconsistent with other evidence of record, because Brummett had only been treated for a short time, and because the assessment was based on subjective information.  (Tr. 29).  However, upon review of the record, the Court must reject each of these reasons as the basis for discounting this opinion.

The Court notes that the only other evidence concerning Brummett's mental status came from the report of a mental hospitalization at Appalachian Regional Hospital (Appalachian) from December 29, 2005 through January 3, 2006.  (Tr. 233-255).  The claimant was hospitalized after trying to shoot himself in the head.  (Tr. 233).  Upon admission, his Global Assessment of Functioning (GAF) was rated at 25.  (Tr. 234).  Such a GAF suggests the existence of an inability to function in most areas according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.  The plaintiff's mental condition stabilized and his current GAF was reported at 60 upon discharge, suggesting the existence of "moderate" psychological symptoms.  (Tr. 235).

However, specific mental limitations contrary to those identified by Dr. Arkadiev were not reported. On January 18, 2006 a treatment note from Cumberland River signed by Dr. Arkadiev indicated a GAF of 40 to 45. (Tr. 263). Such a GAF indicates "serious" psychological symptoms. Thus, the Appalachian records do not specifically contradict Dr. Arkadiev. The overall impression from these various sources suggests that Brummett's mental condition was unstable and fluctuating and, so, the Appalachian hospitalization report is not necessarily contradictory to Dr. Arkadiev's later findings.

The ALJ indicated that another reason for rejecting the opinion of Dr. Arkadiev was that the physician had only been treating Brummett for a short period of time. However, in <u>Blankenship v. Bowen</u>, 874 F.2d 1116, 1121 (6th Cir. 1989), the Sixth Circuit Court of Appeals concluded that no cause existed to question the diagnosis of a psychiatrist made after only <u>one</u> interview and noted that a diagnosis of a mental disorder after one interview was not uncommon. The Court takes judicial notice of the fact that the administration frequently relies upon the opinion of one-time examiners who have had <u>no</u> treating relationship with a claimant. Therefore, the length of the treating relationship would not necessarily render the doctor's uncontradicted opinion invalid.

Finally, the ALJ rejected Dr. Arkadiev's opinion because it was based on subjective information. The Sixth Circuit Court of Appeals, citing Poulin v. Bowen, 817 F.2d 865 (D.C. Cir. 1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment...consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine....In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness....When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

Blankenship, 874 F.2d at 1121.

In Blankenship, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. Blankenship, 874 F.2d at 1121. Therefore, the undersigned must also reject the subjective nature of Dr. Arkadiev's findings as a basis for discounting his opinion.

The ALJ should at least have sought the advice of a medical advisor rather than substituting his lay opinion for that of the treating mental health professional. Since Dr. Arkadiev was also a treating source, Social Security Ruling 96-6p

11

07-141 Brummett

suggests that the advisor would have needed to review the entire record which would need to have included the report from a mental health specialist who had access to more comprehensive and detailed information than that which was available to Dr. Arkadiev. Therefore, a remand of the action for further consideration is required.

Brummett also asserts that the ALJ erred in rejecting the opinion of Dr. Jon Arvin, his treating physician, with regard to his physical condition. Since the case must be reversed and remanded on the issue of the plaintiff's mental condition, the undersigned does not need to reach this issue.

The undersigned concludes that the administrative decision must be reversed and the action remanded by the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 15th day of February, 2008.

Signed By:

*G. Wix Unthank* 

**United States Senior Judge**